AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
APR 29 2025
AT ___ O'CLOCK
John M. Domurad, Clerk - Albany

**UNITED STATES OF AMERICA**
**v.**
**TERRY MEAD JR.**

Case No. 1:25-MJ-128 (DJS)

**Defendant.**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of March 3, 2025 in the county of Albany in the Northern District of New York the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C 2251(a) | Sexual exploitation of a minor |

This criminal complaint is based on these facts:
See Attached Affidavit.

☒ Continued on the attached sheet.

TFO [signature]
*Complainant's signature*
FBI TFO Michelle Crandall
*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: 4/29/25

[signature]
*Judge's signature*

City and State: Albany, New York

Hon. Daniel J. Stewart, U.S. Magistrate Judge
*Printed name and title*

## Affidavit in Support of a Criminal Complaint

I, **Michelle Crandall**, having been first duly sworn, do hereby depose and state as follows:

1. I am a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) and have been since November 2018. I have been a member of the Rotterdam Police Department since July of 2013 and an Investigator since September of 2016. In that capacity, I assist with sexually based offenses and computer crimes. I am assigned to the Albany Field Office, New York. I am currently assigned to investigate federal violations concerning child pornography and the sexual exploitation of children, including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography in violation of Title 18 United States Code, 2252A. I have gained experience regarding such crimes through training in seminars, classes, and everyday work related to conducting these types of investigations.

2. I make this affidavit in support of a criminal complaint charging **Terry Mead Jr.** with violations 18 U.S.C 2251(a) (sexual exploitation of a minor) (concerning V1, a minor female born in December 2020).

3. The statements contained in this affidavit are based upon my investigation, information provided by other law enforcement officers, and on my experience and training. As this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for the requested complaint and arrest warrant.

### Basis for a Probable Cause Finding

4. On March 4, 2025, FBI SA Dominick Canty received information from the Watervliet Police Department. Complaining Witness 1 (CW1) reported to the Watervliet Police Department that Terry Mead Jr. ("MEAD"), took sexually explicit photographs of her 4-year-old

granddaughter, Victim 1 (V-1).

5. On March 4, 2025, CW1 contacted the Watervliet Police Department to report that MEAD had taken a photograph depicting her granddaughter on a bathroom floor sitting a blue colored bathmat with white circles. The child is depicted naked from the waist down, her legs up in the air, and her vagina was exposed. In the image, the child is wearing black colored Nike socks, which CW1 identified as her granddaughter's and turned the socks over to Watervliet Police Department.

6. On March 4, 2025, Task Force Officers Michelle Crandall and Christopher Smith interviewed Complaining Witness 2 (CW2) at the Watervliet Police Department. CW2 provided the following information:

a. On Friday, February 28th, CW2 received a text message from phone number XXX-XXX-1553. CW2 did not recognize the telephone number, but based on the content of the messages and her prior conversations with MEAD, believed the user of the phone to be MEAD. CW2 asked a co-worker to call the phone number in an effort to confirm the user. The individual answered the call and stated that they were MEAD. CW2 continued to communicate with this phone number, attempting to confirm the identity of the user of the phone.

b. On March 3, 2025, at approximately 7:04 pm CW2 received a text message from XXX-XXX-1553 containing a photograph. TFO Crandall and Smith have both reviewed said photograph, which depicts a prepubescent female between the ages of 3-5 years old, naked from the abdomen down seated on a blueish/gray bathmat with white circles on it. The child is wearing black Nike crew socks, her legs are spread, and the lascivious exhibition of her genitals is the focal point of the image. There is a linoleum flooring that is tan in color under the bathmat. There also

appears to be a finger at the bottom of the photograph from the person taking said photograph. After receiving this message, CW2 took screenshots of the text conversations with MEAD and sent them to CW1 via Facebook messenger. CW2 signed a consent to search form for her cell phone. I reviewed the content of the messages and confirmed the conversations between CW2 and MEAD took place, and the above-described image of V-1 was located within the text message thread between CW2 and phone number XXX-XXX-1553.

7. TFO Crandall and Smith then interviewed CW1 at her residence. CW1 provided the following information:

a. CW1 stated that her daughter has three children who CW1 watches every day from approximately 7:30am-5:30pm. On March 3, 2025, MEAD came to CW1's residence to get something. V-1 and her sibling requested a snack, and MEAD stated that he would take them over to his residence to get a snack. CW1 agreed to this and stated they were gone for approximately 5 minutes when she walked over to the residence and located them inside, playing with costume jewelry.

b. CW1 stated that on the morning of March 3, 2025 MEAD dropped his phone, a separate device, off to her because there was an issue with the phone, and it needed to be placed in rice. While MEAD was gone, CW1 was able to power on and unlock that device with MEAD's passcode. In MEAD's Metro by T-Mobile account, CW1 observed a total of three devices associated with his account, two cell phones and one tablet, including a device associated with phone number XXX-XXX-1553. CW1 repeatedly called XXX-XXX-1553, and an employee from Metro by T-Mobile answered. The employee stated the phone was MEAD's and that CW1 could pick up the phone. Later that day, the employee turned over that device to

CW1.

c. When MEAD later arrived at CW1's residence, CW1 would not allow him in and told him that she had both of his cell phones. MEAD denied having two phones. CW1 then threw both devices on the front yard and observed MEAD take possession of both cell phones.

d. CW1 confirmed receiving screenshots of text messages from CW2 on March 3, 2025, but stated that she did not initially see the photograph of V-1 within the messages on the phone. On the same day, CW2 texted XXX-XXX-1553 and said she would be at the Black Bear (bar) and the two should meet. CW1 then went to the bar and shortly thereafter, MEAD walked in. CW1 confronted MEAD about texting CW2, and MEAD denied using that phone number or having another phone.

8. On March 4, 2025, CW1 then reviewed the text messages CW2 sent to CW1 and observed the above-described photograph of V-1. CW2 immediately knew that the child depicted in the photo is 4-year-old V-1 and recognized the location where the photo was taken to be MEAD's bathroom. CW2 texted MEAD a picture of the screenshot and confronted him.

9. CW1 then contacted 911 and requested a police response. Watervliet Police Department ultimately located MEAD and placed him under arrest. Two cell phones were located on his person. Detective Dansbury called phone number XXX-XXX-1553, and it rang from one of the two cell phones taken from MEAD. In a conversation to confirm property, Detective Dansbury asked if both cell phones were MEAD's, and MEAD admitted they were.

10. On March 5th 2025, this Court issued a search warrant (hereinafter "March 5 Warrant") authorizing the search of MEAD's residence in Watervliet, NY to photographically document the residence and seize the bathmat/rug depicted in the photo of V-1, if located. The warrant was executed that same day. While your affiant was lawfully in the residence executing

the March 5 Warrant, a blueish/grey colored bathmat with a white design was located. Furthermore, distinctive marks on the flooring in the bathroom were located that match the same marks on the flooring in the image described above.

11. On March 7, 2025, a forensic interview was conducted of V-1 by an FBI Child Forensic and Adolescent Interviewer. During this interview, V-1 disclosed that MEAD took a photograph of her and pointed to her genitals.

**Conclusion**

12. Based upon the above information, there is probable cause to conclude that on March 3, 2025, in Albany County, New York, in the Northern District of New York, **TERRY MEAD JR** violated Title 18, United States Code, Sections 2251(a).

Attested to by:

TFO [signature]
Michelle Crandall
Task Force Officer
Federal Bureau of Investigation

I, the Honorable Daniel J. Stewart, United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure and was signed by me on April 29, 2025.

[signature]
Honorable Daniel J. Stewart
United States Magistrate Judge
Northern District Of New York