**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

    **vs.**

**TERRY MEAD JR.,**

                  **Defendant.**

                                  **1:26-CR-32**
                                  **(MAD)**

---

**APPEARANCES:**                                   **OF COUNSEL:**

**OFFICE OF THE UNITED**           **ASHLYN JESSICA MIRANDA, AUSA**
**STATE ATTORNEY**                  **JEFFREY BROWN, AUSA**
445 Broadway, Room 218
Albany, New York 12207
Attorneys for the Government

**OFFICE OF THE FEDERAL**          **PAUL E. SHELTON, JR., AFPD**
**PUBLIC DEFENDER**
54 State Street - Suite 310
Albany, New York 12207
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On April 29, 2025, the Government filed a criminal complaint against Defendant Terry Mead, Jr., charging him with one count of sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a). *See* Dkt. No. 1. It was not until January 28, 2026, that the Government returned a four count indictment for two counts of sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) and (e), one count of committing a felony offense involving a minor by a registered sex offender in violation of 18 U.S.C. § 2260A, and one count of possession of child pornography in

1

violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).  No stipulations to exclude time under the Speedy Trial Act were filed between the times the complaint and indictment were filed.

Presently before the Court is Defendant's motion to dismiss counts one and two of the indictment based on an alleged violation of the Speedy Trial Act, 18 U.S.C. § 3161(b).  *See* Dkt. No. 18.  The Government opposes the motion.  *See* Dkt. No. 21.  For the following reasons, Defendant's motion is denied.

## II. DISCUSSION

### A.    Legal Standard

"The Speedy Trial Act allows a period of thirty days between arrest and indictment, . . . except for certain periods of delay permitted by statute[.]"  *United States v. Culbertson*, 598 F.3d 40, 47 (2d Cir. 2010) (citing 18 U.S.C. § 3161(b), (h)).  "If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days."  18 U.S.C. § 3161(b).  Some of the sources for delay that are automatically excluded from the Speedy Trial clock are "delay resulting from any pretrial motion," *id.* § 3161(h)(1)(D); "delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district," *id.* § 3161(h)(1)(E); "delay resulting from transportation of any defendant from another district . . . [not] in excess of ten days from the date [of] an order of removal," *id.* § 3161(h)(1)(F); and "delay resulting from the absence or unavailability of the defendant or an essential witness," *id.* § 3161(h)(3)(A).

Likewise, "[a]mong the excluded periods of delay are those granted by the court *sua sponte* or at the request of a party, but only upon findings 'that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a

speedy trial.'" *Culbertson*, 598 F.3d at 47 (quoting 18 U.S.C. § 3161(h)(7)(A)).  "A prospective waiver of all rights under the Speedy Trial Act is not acceptable, nor is a defendant's acquiescence to a continuance sufficient compliance with the Act for an ends-of-justice exclusion in the absence of specific findings."  *Id.* (citing *Zedner v. United States*, 547 U.S. 489, 501-03 (2006)). As to an interest of justice exclusion of time, the Speedy Trial clock does not run "if the judge granted [a] continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).  "'[I]n determining whether to grant [such] a continuance,' the Court 'shall consider' certain enumerated factors, 'among other[ ]' non-enumerated factors; enumerated factors include '[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.'"  *United States v. Dafna*, No. 19-CR-408, 2024 WL 4424241, *5 (E.D.N.Y. Oct. 5, 2024) (quoting 18 U.S.C. § 3161(h)(7)(B)(i)).

"Time may not be excluded pursuant to this provision, however, 'because of . . . lack of diligent preparation . . . on the part of the attorney for the [g]overnment.'"  *Id.* (quoting 18 U.S.C. § 3161(h)(7)(C)).  "Courts have [] determined that a showing of 'bad faith' or 'unjustifiable' conduct must be made in order to retroactively include time that was previously excluded based on the government's lack of diligent preparation."  *Id.* (citing *United States v. Jain*, No. 19-CR-59, 2020 WL 6047812, *11 (S.D.N.Y. Oct. 13, 2020); *United States v. Reichberg*, No. 16-CR-468, 2018 WL 6599465, *7 (S.D.N.Y. Dec. 14, 2018); *United States v. Vasquez*, No. 87-CR-526, 1989 WL 82422, *5 (S.D.N.Y. July 17, 1989)).

"As a sanction for noncompliance [with the Speedy Trial Act], late-filed charges must be dismissed."  *United States v. Baker*, No. 23-6318, 2025 WL 1681324, *1 (2d Cir. June 16, 2025)

3

(citing 18 U.S.C. § 3162(a)(1)).  "But [] the statute 'requires dismissal only of "such charge against the individual contained in such complaint[.]"'"  *Id.* (quoting *United States v. Napolitano*, 761 F.2d 135, 137 (2d Cir. 1985)).  "[A]n indictment filed outside of the statutory window need not be dismissed 'if it pleads different charges from those in the complaint[.]'"  *Id.* (quoting *United States v. Gaskin*, 364 F.3d 438, 451 (2d Cir. 2004)).  "[T]his applies even if the indictment charges 'arise from the same criminal episode as those specified in the original complaint or were known or reasonably should have been known at the time of the complaint.'"  *Id.* (citation omitted).  "Instead, 'when a complaint charge and an indictment charge involve overlapping or even identical facts, dismissal is not warranted under § 3162(a)(1) if the indictment charge requires proof of elements distinct from or in addition to those necessary to prove the crimes pleaded in the complaint.'"  *Id.* (citations omitted); *see also United States v. Reyes-Batista*, 844 Fed. Appx. 404, 409 (2d Cir. 2021) (summary order).

**B.    Background**

On November 13, 2023, Defendant pled guilty to one count of failure to register as a sex offender as required under the Sex Offender Registration and Notification Act in violation of 18 U.S.C. § 2250(a).  *See United States v. Mead*, No. 1:23-CR-73, Dkt. No. 41.  That conviction was the result of registration requirements being in place because of Defendant's 2006 state court conviction for criminal sexual act in the third degree in violation of New York State Penal Law Section 130.40(2).  *See id.*, Dkt. No. 38 at 2.[1]  Defendant was sentenced by this Court for his failure to register on April 2, 2024.  *See id.*, Text Minute Entry 04/02/2024.  Defendant was sentenced to Time Served and five years of supervised release.  *See id.*, Dkt. No. 57.  He commenced his supervised release term the same day.  *See id.*, Dkt. No. 60.

---

[1] Citations are to the pagination generated by CM/ECF in the header of each page.

On March 4, 2025, this Court issued a warrant for Defendant's arrest based on the filing of a Petition for Warrant or Summons for Offender Under Supervision for two alleged violations of his supervised release conditions. *See id.* Violation one alleges as follows:

> Special Condition: You must not have direct contact with any child you know or reasonably know to be under the age of 18 without the permission of the probation officer.
>
> On March 4, 2025, the defendant had unauthorized and unmonitored contact with minor children while at his residence. The defendant's girlfriend . . . admitted to allowing the defendant ongoing physical contact with her minor grandchildren while she was babysitting.
>
> During the unauthorized contact on March 4, 2025, a photo was taken of the genitalia of a 4-year-old minor and disseminated to another person via text message from the defendant's phone.

*Id.* at 1. Defendant made his initial appearance on the violation petition, waived his right to a detention hearing, and was remanded to the custody of the U.S. Marshals. *See id.*, Text Minute Entry, 03/05/2025. The final revocation hearing was originally scheduled for March 19, 2025. *See id.* On March 14, 2025, the Government requested, and Defendant consented, to adjourn the hearing for sixty days. *See id.*, Dkt. No. 67. The hearing was rescheduled for May 22, 2025. *See id.*, Dkt. No. 68.

The criminal complaint underlying this case was then filed on April 29, 2025. *See* Dkt. No. 1. The complaint charged Defendant with a violation of 18 U.S.C. § 2251(a). *See id.* Attached to the complaint is a probable cause affidavit written by FBI Task Force Officer Michelle Crandall, which alleges as follows:

> 4.      On March 4, 2025, [Federal Bureau of Investigation Special Agent] Dominick Canty received information from the Watervliet Police Department. Complaining Witness 1 (CW1) reported to the Watervliet Police Department that Terry Mead Jr. ("Mead"), took

> sexually explicit photographs of her 4-year-old granddaughter, Victim 1 (V-1).
>
> 5.    On March 4, 2025, CW1 contacted the Watervliet Police Department to report that Mead had taken a photograph depicting her granddaughter on a bathroom floor sitting [on] a blue colored bathmat with white circles.  The child is depicted naked from the waist down, her legs up in the air, and her vagina was exposed.  In the image, the child is wearing black colored Nike socks, which CW1 identified as her granddaughter's and turned the socks over to the Watervliet Police Department. . . .
>
> 7.    [Task Force Officers] interviewed CW1 at her residence. CW1 provided the following information:
>
>> a.    CW1 stated that her daughter has three children who CW1 watches every day from approximately 7:30am-5:30pm.  On March 3, 2025, Mead came to CW1's residence to get something.  V-1 and her sibling requested a snack, and Mead stated that he would take them over to his residence to get a snack.  CW1 agreed to this and stated they were gone for approximately 5 minutes when she walked over to the residence and located them inside, playing with costume jewelry.

*Id.* at 3-4.  During the interview, CW1 confirmed to Task Force Officers Crandall and Christopher Smith that the photo of V-1 was of her 4-year-old granddaughter and that she recognized the background of the photo as Defendant's bathroom.  *See id.* at 5.  Law enforcement executed a search warrant on Defendant's home and located "a blueish/grey colored bathmat with a white design" and "distinctive marks on the flooring in the bathroom . . . that match the same marks on the flooring in the image . . . ."  *Id.*  Defendant made his initial appearance on the complaint on May 12, 2025, and waived his right to a detention hearing.  *See* Text Minute Entry 05/12/2025. Defendant, therefore, remained in the custody of the U.S. Marshals.  *See id.*

On May 14, 2025, an amended supervised release violation petition was filed.  *See Mead*, No. 23-CR-73, Dkt. No. 69.  The amended petition alleges as follows:

6

> Mandatory: You shall not commit another federal, state, or local crime.
>
> On April 29, 2025, a criminal complaint was filed charging the defendant with Sexual Exploitation of a Minor in violation of 18 U.S.C. 2251(a). On or about March 3, 2025, the defendant is alleged to have taken sexually explicit photos of his girlfriend's four-year-old granddaughter.

*Id.* Based on the filing of the amended petition, Defendant's final revocation hearing was adjourned until May 27, 2025. *See id.*, Text Notice 05/27/2025. Between May 21, 2025, and October 25, 2025, the Government and Defendant repeatedly requested that the Court adjourn the final revocation hearing. *See id.*, Dkt. Nos. 70, 72, 74, 75. The hearing has been most recently rescheduled for April 30, 2026. *See id.*, Dkt. No. 79.

On November 12, 2025, a new public defender was assigned to represent Defendant in the supervised release case. *See id.*, Dkt. No. 76. That same change in representation was not made in the criminal complaint case until January 5, 2026. *See* Dkt. No. 9.

On December 19, 2025, the Government filed a stipulation to exclude sixty days of time from the speedy trial calculations in Case No. 23-CR-73—the revocation proceeding. *See Mead*, No. 23-CR-73, Dkt. No. 77. The Court contacted counsel for both parties on December 22, 2025, via e-mail, stating that the speedy trial stipulation was filed in the wrong action. The Court twice stated to the attorneys in the e-mail that speedy trial had already expired months before. The Court inquired whether the parties intended to file the stipulation in the correct case: 26-CR-32. The Government responded on the same day, stating that it did intend on filing the stipulation in the correct case. The Government never did so.

On January 5, 2026, Magistrate Judge Daniel J. Stewart scheduled a status conference in the presently pending matter. *See* Dkt. No. 8. At the conference, the "Court discusse[d] with

Defendant his rights under the Speedy Trial Act and advise[d] him to confer with his attorney in that regard." Text Minute Entry 01/08/2026. On January 20, 2026, the Government filed a letter asking to adjourn the final revocation hearing for another ninety days. *See Mead*, No. 23-CR-73, Dkt. No. 78. Defendant did not object. *See id.* On January 22, 2026, the Court granted the adjournment request and rescheduled the hearing for April 30, 2026. *See* Dkt. No. 79.

On January 28, 2026, the Government returned the four-count indictment against Defendant. *See* Dkt. No. 10. Count one alleges as follows:

> On or about March 3, 2025, . . . [Defendant] did use, persuade, induce, entice, and coerce a minor, that is V1, a female child then aged approximately 4 years old whose identity is known to the grand jury, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, to wit, an image file depicting V1 naked from the waist down, bending over and exposing her vagina in a lewd and lascivious fashion ("Image 1") . . . .

Dkt. No. 10 at 1. Count one charges Defendant under subsection (a) of § 2251. Count two alleges as follows:

> On or about March 3, 2025, . . . [Defendant] having custody and control of a minor, that is, V1 as described above, did permit V1 to engage in sexually explicit conduct for the purpose of producing a visual depictions of such conduct, to wit, a separate image file depicting V1 naked from the abdomen down sitting on a blueish/gray bathmat with white circles spreading her legs and exposing her vagina in a lewd and lascivious fashion ("Image 2") . . . .

*Id.* at 2. Count two charges Defendant with a violation of subsection (b) of § 2251.

## C.    Analysis

"[T]he [G]overnment concedes that it did not obtain an indictment concerning the crime charged in the complaint within applicable deadline . . . ." Dkt. No. 21 at 1. However, the Government argues the Court should not dismiss counts one or two from the indictment because

the charge alleged in count one of the indictment charges a different instance of sexual exploitation than alleged in the criminal complaint. *See id.* at 7. The Government states that count one in the indictment relies on a different image of the minor victim than what was referenced in the complaint. *See id.* The Government acknowledges that the offense conduct alleged in the complaint, *i.e.*, the image that was referenced, underlies count two of the indictment, but argues that dismissal of count two is unwarranted because count two alleges a violation of subsection (b) of § 2251, which was not charged in the complaint. *See id.* at 8-12.

Defendant argues that the charge in the complaint "is identical to Count 1 of the Indictment." Dkt. No. 18 at 9. As to count two, Defendant argues that the "gilding doctrine" applies and requires dismissal of the allegation because the Government cannot add factual allegations to a related charge to avoid dismissal under the Speedy Trial Act. *Id.* at 9-15.

As Defendant states, the Honorable David M. Hurd previously noted that "[t]here is a recognized, though not often applied, exception to th[e] rule" that "dismissal is not warranted under § 3162(a)(1) if the indictment charge requires proof of elements distinct from or in addition to those necessary to prove the crimes pleaded in the complaint:" "the gilding exception." *United States v. Peppin*, 365 F. Supp. 2d 261, 267 (N.D.N.Y. 2005); *see also* Dkt. No. 18 at 10. "Case law does not provide a definition of the gilding exception much beyond the dictionary definition of the word gilding." *Peppin*, 365 F. Supp. 2d at 267. Judge Hurd reiterated "Webster's Third New International Dictionary defin[intion of] gilding as 'embellishing.' Webster's Collegiate Dictionary defines it as 'unnecessary ornamentation.'" *Id.* (citing *United States v. Oliver*, 683 F. Supp. 35, 38 (E.D.N.Y.1988)). "Thus, a gilded charge is one that merely annotates in more detail the same charge alleged in the initial accusatory instrument." *Id.* (citing *United States v. Bailey*, 111 F.3d 1229, 1236-37 (5th Cir. 1997)). Judge Hurd stated, "[t]he Second Circuit acknowledged

9

the exception in *United States v. Napolitano* noting that there may be instances where dismissal is required because the indictment merely "'gilds" an earlier charge' or sets forth a 'mere difference in accusational dates.'" *Id.* (quoting *United States v. Napolitano*, 761 F.2d 135, 138 (2d Cir. 1985)).

A judge in the District of Connecticut has described "a 'gilded charge' . . . [as] a charge that attempts to circumvent the Speedy Trial Act's thirty-day requirement by adding material information to the original indictment, when that additional information was known and should have been joined with the charge in the original indictment." *United States v. Deas*, No. 3:07-CR-73, 2008 WL 5063905, *3 (D. Conn. Nov. 24, 2008).  One judge in the Western District of New York has commented that "[t]he gilding doctrine as applied to Sixth Amendment and statutory speedy trial rights is neither clearly-defined nor even necessarily valid in the Second Circuit." *United States v. Pennick*, No. 10-CR-191, 2018 WL 3429314, *9 (W.D.N.Y. July 16, 2018); *see also United States v. Bilotta*, 645 F. Supp. 369, 371 (E.D.N.Y. 1986) (stating that the Act "does not prevent later prosecution for different crimes even if the subsequent charges . . . arise from the same criminal episode as those specified in the original complaint or were known or reasonably should have been known at the time of the complaint").

The Court respectfully disagrees with the *Peppin* court's statement that the Second Circuit "not[ed] that there may be instances where dismissal is required because the indictment merely 'gilds' an earlier charge . . . ." *Peppin*, 365 F. Supp. 2d at 267.  In *Napolitano*, the Second Circuit stated that "[t]he statutory language is clear: it requires dismissal only of '*such* charge against the individual contained in *such* complaint.'" *Napolitano*, 761 F.2d at 137 (quoting 18 U.S.C. § 3162(a)(1)).  The Second Circuit continued:

10

> [T]he legislative history of the Act clearly indicates that Congress considered and rejected [the] defendant's suggestion that the Act's dismissal sanction be applied to subsequent charges if they arise from the same criminal episode as those specified in the original complaint or were known or reasonably should have been known at the time of the complaint.

*Id.*  The Second Circuit noted the defendant's reliance on "cases [which] hold only that a subsequent prosecution may be barred if it is based on an indictment which merely 'gilds' an earlier charge or if the subsequent charge is a mere difference in accusational dates," *id.* (collecting cases), but the Second Circuit did not adopt or rely on those cases because "the initial charge against the defendant for making a false application for a bank account was entirely different from and based on different proof than the later indictment for larceny of bank funds." *Id.*

Two decades later, the Second Circuit decided *United States v. Gaskin*, 364 F.3d 438, 445 (2d Cir. 2004).  In *Gaskin*, the defendant "urge[d the Second Circuit] to focus on language in *Napolitano* that acknowledged—without adopting—holdings in other circuits suggesting that § 3162(a)(1) 'may' require the dismissal of 'an indictment which merely "gilds" an earlier charge.'" *Gaskin*, 364 F.3d at 455-56 (quoting *Napolitano*, 761 F.2d at 138).  The Second Circuit commented that "[t]he existence and contours of a gilding doctrine to expand the scope of § 3162(a)(1) beyond the express charges specifically pleaded in a complaint has generally been viewed with skepticism."  *Id.* at 456 (citing *United States v. Watkins*, 339 F.3d 167, 176-78 (3d Cir. 2003) (surveying case law addressing gilding doctrine)).  The Second Circuit concluded that it did not "need [to] decide whether there are any circumstances where we might apply the concept of gilding to a Speedy Trial Act challenge[,]" because it held "simply that pleadings that

11

add elements to the government's burden of proof beyond those required for the lesser included charges in a complaint do more than gild the original charges." *Id.*

Because the Second Circuit has not formally adopted or endorsed the gilding doctrine, the Court will focus only on what the Second Circuit has held—that § 3162(a)(1) "requires dismissal only of '*such* charge against the individual contained in *such* complaint.'" *Napolitano*, 761 F.2d at 137 (citation omitted). In other words, "section 3162(a)(1) requires dismissal of *only* the offense or offenses charged in the original complaint.'" *Id.* (quoting *United States v. Pollock*, 726 F.2d 1456, 1462 (9th Cir. 1984)). "[T]his applies even if the indictment charges arise from the same criminal episode as those specified in the original complaint or were known or reasonably should have been known at the time of the complaint." *Baker*, 2025 WL 1681324, at *1 (citation and quotation marks omitted).

Here, the complaint charged Defendant with a violation of § 2251(a) based on Image 1 of the minor victim depicting her "on a bathroom floor sitting [on] a blue colored bathmat with white circles. The child is depicted naked from the waist down, her legs up in the air, and her vagina was exposed. In the image, the child is wearing black colored Nike socks . . . ." Dkt. No. 1 at 3. Count one of the indictment charges Defendant with a violation of § 2251(a) based on Image 2, which is of the same minor victim, but "naked from the waist down, bending over and exposing her vagina in a lewd and lascivious fashion." Dkt. No. 10 at 1. The Government provided the Court with a declaration from Michelle Crandall, a Sergeant with the Rotterdam Police Department, who was formerly an FBI Task Force Officer. *See* Dkt. No. 21-3. Sergeant Crandall attests that she was involved in the investigation into Defendant on March 4, 2025, at which she saw Image 1 on a cellular phone that had been sent from Defendant. *See id.* at ¶ 3. She declares that Image 1 was the photo described in the criminal complaint. *See id.* at ¶ 6. Sergeant Crandall

12

then explains that on July 22, 2025, she reviewed the materials extracted from Defendant's cell phone and located Image 2. *See id.* at ¶ 7. She declares she "was not aware of this second image . . . at the time the criminal complaint was signed on April 29, 2025." *Id.* Sergeant Crandall states that Image 2 is related to count one of the indictment. *See id.*

Defendant does not dispute that counts one and two of the indictment "involve distinct images[.]" Dkt. No. 18 at 13. Rather, he argues that, at the time the complaint was filed, "the United States was aware of multiple images and proffered proof of multiple images" because Sergeant Crandall wrote in her affidavit supporting the complaint that the FBI received information that Defendant "took sexually explicit photographs of" the minor victim. *Id.* Because Sergeant Crandall used the plural form of the word "photographs," Defendant argues that the two different images underlying the complaint and count one of the indictment should not change the outcome of the Court's decision. *Id.*

The Court disagrees. First, the affidavit submitted with the complaint states that "CW1 contacted the Watervliet Police Department to report that Mead had taken a photograph . . . ." Dkt. No. 1 at 3. Therefore, the complaint does use the singular form of the word "photograph." *Id.* According to Sergeant Crandall's declaration, the specific image in count one of the indictment was not known to law enforcement at the time the complaint was filed. *See* Dkt. No. 21-3 at ¶ 7. Defendant has not rebutted Sergeant Crandall's declaration. This is not a situation where count one of the indictment relies on the same image of the minor victim from the complaint, but adds more details to the description. *See Peppin*, 365 F. Supp. 2d at 267 ("[A] gilded charge is one that merely annotates in more detail the same charge alleged in the initial accusatory instrument"). The image underlying count one of the indictment is a different photo than the image referenced in the criminal complaint.

13

The Second Circuit has noted that "in multiple-count child pornography cases . . ., what units of prosecution may be pursued in parallel without raising Double Jeopardy concerns presents a question of law that is unsettled in" this Circuit. *United States v. Valerio*, 765 Fed. Appx. 562, 570 (2d Cir. 2019) (summary order). However, "other Circuits have addressed it and have concluded that each use of a minor to create a single image is enough to support a single count of conviction." *Id.* (citing *United States v. Esch*, 832 F.2d 531, 541 (10th Cir. 1987) ("As we construe the statute, each use of a minor to create a visual depiction constitutes a separate and distinct violation, and thus represents the correct unit of prosecution"); *United States v. Fee*, 491 Fed. Appx. 151, 157 (11th Cir. 2012) (summary order) ("The text of section 2251(a) makes clear that Congress proscribed each [discrete] visual depiction of a minor as a separate offense")). The Second Circuit's decision in *Valerio* concerned charges for possession and receipt of child pornography, and the Second Circuit noted that it has "repeatedly declined to find plain error when the factual record demonstrates that the jury could have based its possession and receipt convictions on separate images." *Id.* at 569.

Other district courts have also permitted multiple charges to be brought against a defendant based on different photographs of the same minor victim. *See Connor v. United States*, No. 2:10-CR-332, 2015 WL 4450118, *7 (S.D. Ohio July 20, 2015), *R. & R. adopted*, 2015 WL 5158939 (S.D. Ohio Sept. 3, 2015) ("Different depictions of child pornography downloaded on different days, however, do not involve a single act or transaction and therefore do not implicate double jeopardy concerns"); *Lewis v. White*, No. 07-10187, 2008 WL 4910580, *4 (E.D. Mich. Nov. 13, 2008) ("It was undisputed at [the p]etitioner's trial that he took at least ten photographs of the child victim. . . .  [E]ach photograph can be considered an act of child sexually abusive activity even though the photographs were taken on a single occasion").

14

Based on the foregoing, the Court finds that the use of a different image in the criminal complaint and count one of the indictment is a meaningful difference.  Therefore, the offense charged in the complaint is not the same offense charged in count one of the indictment, even though both allege a violation of 18 U.S.C. § 2251(a).  Likewise, the Government's allegation of a violation of § 2251(b) in count two of the indictment, which uses the same photograph that was referenced in the complaint, does not require dismissal because "§ 2251(a) and (b) are separate offenses."  *United States v. Overton*, 573 F.3d 679, 693 (9th Cir. 2009).

As explained, "when a complaint charge and an indictment charge involve overlapping or even identical facts, dismissal is not warranted under § 3162(a)(1) if the indictment charge requires proof of elements distinct from or in addition to those necessary to prove the crimes pleaded in the complaint." *Baker*, 2025 WL 1681324, at *1 (citations and quotation marks omitted).  Subsection (a) of § 2251 requires proof that, among other things, "the defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct[.]"  18 U.S.C. § 2251(a). Subsection (b) requires evidence that, among other things, the defendant was a "parent, legal guardian, or person having custody or control of" the minor victim and the defendant "knowingly permit[ted] such minor to engage in, or to assist any other person to engage in, sexually explicit conduct . . . ." *Id.* § 2251(b).  Although count two of the indictment relies on the same facts as those alleged in the complaint, count two charges a violation under subsection (b) which requires proof of an element that the charge in the complaint for a violation of subsection (a), does not.

Defendant argues that "it is difficult to imagine a person accused of a hands-on offense (as opposed to, say, remotely producing child pornography with a hidden camera or via a strictly digital connection) being guilty of an offense under § 2251(a) but not § 2251(b)."  Dkt. No. 18 at

15

12. This argument lacks merits. Defendant acknowledges that 18 U.S.C. § 2256(7) defines "custody or control' as 'includ[ing] temporary supervision over or responsibility for a minor whether legally or illegally obtained." *Id.* at 11. "Custody or control" is not an element of § 2251(a). Unfortunately, as the Government states, "[i]n person and even hands-on abuse can occur in an instant, almost anywhere . . . ." Dkt. No. 21 at 11-12. Defendant has not presented any authority to support his argument that if an individual is guilty of a hands-on offense under § 2251(a), then that person must have had "custody or control" over the minor.

In sum, because the facts underlying the § 2251(a) charge in count one of the indictment are different than the facts alleged in the complaint—the charges are the result of different photos, *i.e.*, different instances of sexual exploitation—count one does not need to be dismissed. Similarly, because count two in the indictment charges Defendant with violating § 2251(b), which is a different crime than alleged in the complaint and requires proof of a different element, count two need not be dismissed. The Court concludes as such despite count two's reliance on the same photograph as referenced in the complaint.

The Speedy Trial Act requires an indictment to be brought within sixty days of the filing of the complaint, and, here, "[t]he Indictment was filed on January 28, 2026—either 244 or 231 days after time expired" (depending on the start date for the calculation). Dkt. No. 18 at 16-17. Regardless, because the case law does not support dismissing either count one or two where the charges alleged therein are not the exact same as those alleged in the complaint, Defendant's motion is denied.[2]

---

[2] As the Court has denied the motion to dismiss, it need not address the parties' argument regarding whether dismissal should be with or without prejudice.

16

### III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that the motion to dismiss (Dkt. No. 18) is **DENIED**; and the Court further

**ORDERS** that the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  April 27, 2026
         Albany, New York

Mae A. D'Agostino
U.S. District Judge

17